**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ISHMAEL A. SASSER,

      Petitioner,

v.                              Case No. 8:17-cv-2299-T-33TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## ORDER

Petitioner Ishmael A. Sasser, a Florida inmate, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Pinellas County convictions. (Doc. 1). Respondent filed a response (Doc. 6). Sasser did not file a reply. Upon consideration, the petition is dismissed as untimely. Alternatively, Sasser is not entitled to relief on the claims presented.

## PROCEDURAL HISTORY

Sasser entered negotiated pleas of guilty in three cases. He was sentenced to terms of 15 years in prison as a prison releasee reoffender for burglary of an occupied dwelling and aggravated battery. (Doc. 8, Exs. 7, 8). He was sentenced to five years in prison for failure to appear. (Doc. 8, Ex. 9). All sentences were concurrent. (Doc. 8, Exs. 7-9). Sasser did not appeal, and his motion and amended motions to withdraw plea filed under Florida Rule of Criminal Procedure 3.170(l) were denied. (Doc. 8, Exs. 10-13). The state court also denied Sasser's motion and amended motions for postconviction relief filed

under Florida Rule of Criminal Procedure 3.850. (Doc. 8, Ex. 17). The state appellate court *per curiam* affirmed the denial of relief. (Doc. 8, Ex. 21).[1]

## TIMELINESS DETERMINATION

Respondent contends that Sasser's petition is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year period of limitations for filing a § 2254 federal habeas petition. This period begins running on the later of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Sasser entered his pleas on January 10, 2013. Before the expiration of his 30-day period to file a direct appeal, he timely filed a motion to withdraw his plea under Florida Rule of Criminal Procedure 3.170(l). (Doc. 8, Ex. 10). The state court denied his motion and his subsequently-filed amended motions on September 11, 2013, and advised that he had 30 days to appeal. (Doc. 8, Ex. 13). Sasser did not appeal, and the judgment became final upon expiration of his time to do so.[2] Therefore, his AEDPA limitations period began to run on October 12, 2013.

---

[1] Sasser's federal habeas petition contains the name "Irving Palmer" in the caption, and, as a result, the docket lists the name "Irving Palmer" as an alias of Petitioner. Therefore, Respondent moves to dismiss Irving Palmer as a fictitious party. (Doc. 6, p. 2). It is clear that "Irving Palmer" is not Sasser's name or alias. Respondent's motion is granted to the extent that the Clerk will be directed to remove the alias "Irving Palmer" from the docket.

[2] *See Booth v. State*, 14 So.3d 291, 292 (Fla. 1st DCA 2009) ("Appellant did not appeal his judgment and sentence. Thus, his judgment and sentence became final 30 days later when the time for filing an appeal passed.").

Sasser did not file any tolling applications in state court prior to the limitations period's expiration one year later on October 12, 2014.[3]  Accordingly, Sasser's federal habeas petition, filed on September 26, 2017, is untimely under § 2244(d)(1)(A).  Sasser has not argued that the limitations period should be equitably tolled. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (the one-year period of § 2244(d) "is subject to equitable tolling in appropriate cases.").  Nor has he alleged actual innocence to overcome the time bar. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (a showing of actual innocence may permit the consideration of a time-barred habeas petition).  Alternatively, even if the petition was timely, Sasser would not be entitled to relief.

## STANDARD OF REVIEW

Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

---

[3] Sasser did not file his initial Rule 3.850 postconviction motion until March 4, 2015.  (Doc. 8, Ex. 17, p. 3).  *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) (a postconviction motion filed after the expiration of the federal limitations period did not toll or re-initiate that period).

indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of Sasser's postconviction motions without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

## DISCUSSION

Guilty Plea

"A reviewing federal court may set aside a state court guilty plea only for failure to

satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

The record shows that Sasser was eligible for both prison releasee reoffender ("PRR") and habitual felony offender ("HFO") sentencing for the charges of aggravated battery and burglary of an occupied dwelling. As an HFO, he could have been sentenced to up to 30 years in prison on each charge. (Doc. 8, Ex. 3; Ex. 4, p. 167). And, as a PRR, any sentence would have included a mandatory 15-year term. (*Id.*). In addition, Sasser faced up to an additional five years in prison for the charge of failure to appear. (*Id.*). The change of plea transcript shows that the State rejected Sasser's offer of an overall 15-year PRR sentence to resolve all of his pending charges, but that the court ultimately accepted his offer:

> THE COURT: Okay. And, [counsel], you've talked to your client. How does he want to proceed today?
>
> [COUNSEL]: Well, Judge, he understands that I have on multiple occasions asked and begged the State to waive the PRR. They will not. This morning he offered 15 years as a PRR to resolve this case that's set for trial, as well as the FTA and the residential burglary that occurred recently. I did make that offer to the State. They rejected that.
>
> He's prepared to offer Your Honor 15 years as a PRR, understanding he would serve every day of it.
>
> THE COURT: Is your victim against this disposition, State, or is it just that it's morning of trial and you don't want to accept any plea?
>
> [STATE]: Yes to both, Your Honor. The victim is against the plea of just 15. We think he does deserve the full 30. In addition, as far as 15 for both, the

State feels that's inappropriate.

What happened was - - how those new charges came about was this defendant, after spending almost a year in custody, somehow got someone to agree - - or someone bonded him out, because in the week that he bonded out he had contact with the victim, so the State Attorney's Office tried to set a hearing in order to revoke his bond.

We set a hearing, but then had to reschedule it November 28th and set it for a pretrial and a motion to revoke his bond. He failed to appear, so an FTA warrant was issued. While he's out on this FTA and this bond at the time, he ends up picking up a new burglary. The burglary happened on December 13th of 2012. He was then arrested on that burglary on December 17th of 2012.

So not only does he have this charge, he then bonds out and then commits a burglary to a residential dwelling. . .

. . .

THE COURT: All right. I - - you know, the agg batt's bad. I am not disputing that at all, and I'm not - - the burglary is not good either. The question is whether 15 day-for-day is enough for a plea and not have to go through the trial in the process. That's really what it amounts to. That's the bottom line. I'm kind of a mind that I - - you know, and he's making that as a formal offer? He prepared to sign the plea form?

[COUNSEL]: Judge, I'll have to go through the plea form with him, but yes. I talked to him in the back. He is offering 15 years PRR, day-for-day. . .

(Doc. 8, Ex. 4, pp. 157-159, 161).

After Sasser reviewed the plea form, the court questioned Sasser and his counsel

about the pleas:

THE COURT: All right. We're back on the record in State versus Ishmel Sasser.

You've had a chance to further discuss the matter with him; is that right, [counsel]?

[COUNSEL]: Yes, Judge, I have.

THE COURT: How does he wish to proceed?

[COUNSEL]: Judge, he would like to go forward with a guilty plea, understanding it would include the new charges, the residential burglary and the failure to appear, that those would be concurrent with his case that's set for trial today, the aggravated battery.

THE COURT: Okay. So he's got 15 DOC, PRR day-for-day on the burglary and the agg batt, and the concurrent five straight on the FTA, right?

[COUNSEL]: Yes, Judge.

THE COURT: Is that - -

[COUNSEL]: He has asked me to inquire whether or not you would even up credit. As I said previously, he's got almost a year in on the aggravated battery, and then these new ones, he has next to nothing.

THE COURT: The State doesn't even want me to take the deal at all under the circumstances.

[COUNSEL]: Right.

THE COURT: I think it's as is under the circumstances, okay?

[COUNSEL]: I told him I would inquire.

THE COURT: All right. He wants to enter a guilty plea with that as the understanding?

[COUNSEL]: Yes, Judge.

THE COURT: Can you raise your right hand, sir?

(The defendant was duly sworn by the Court.)

THE COURT: You can put your hand down. How old are you, Mr. Sasser?

THE DEFENDANT: I'm 26.

THE COURT: Twenty-six? How far in school have you gone?

THE DEFENDANT: I graduated.

THE COURT: You graduated from high school?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had a chance to review the plea form that contains all of your constitutional rights with [counsel]?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand all of the constitutional rights that you have that apply in these cases?

THE DEFENDANT: Yes, sir.

THE COURT: You have a right to a jury trial. We had a jury ready to come up here. We could have selected the jury and actually tried the case. Your lawyer could cross-examine any State witnesses, call witnesses on your behalf, and you could choose to testify or not testify as you saw fit. We're not going to do any of that because we're agreeing to the sentence and to get the cases resolved; do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Is anybody threatening you or forcing you to do this?

THE DEFENDANT: No, sir.

THE COURT: Did anybody promise you anything other than what we've talked about here this morning?

THE DEFENDANT: No, sir.

THE COURT: Are you under the influence of alcohol or narcotics at the present time?

THE DEFENDANT: No, sir.

THE COURT: In the past have you been treated for a mental illness?

THE DEFENDANT: No, sir.

THE COURT: You've had enough time - - have you had enough time to talk to [counsel] about your cases?

THE DEFENDANT: Off and on.

THE COURT: All right. Are you satisfied with the legal representation that's been provided to you?

THE DEFENDANT: Not really.

THE COURT: All right. Is there some specific complaint that you want to indicate for the record?

THE DEFENDANT: Well, Federico, I just felt like - - I haven't seen one thing to kind of fight all of the trying to get the PRR waived.

THE COURT: Well, I think he's asked the State. The State doesn't even want me to give you the PRR today. They want more than just the PRR on the case. So you've heard that, and you've heard the State Attorney indicate that. I'm not sure what [counsel] can do other than continue to ask, and they say no, under the circumstances. I'm not sure what else he can do.

The deal that you made, or that we've agreed to, is between yourself and myself; not even the State. The State's cut out of it because they don't even want me to give you the 15 PRR on this; do you understand all of that?

THE DEFENDANT: Yes, sir.

THE COURT: You're not required to accept this plea. Do you want to go forward with this plea to get the cases resolved?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And you understand the aggravated battery, the State has noticed you as a habitual offender in addition to the PRR. Do you understand that?

THE DEFENDANT: How am I habitualized?

(*Id.*, pp. 162-67).

The court reviewed with Sasser his qualifications for habitual offender sentencing, and the maximum sentences he faced on all counts. (*Id.*, pp. 167-69). Sasser stated that he understood the potential sentences. (*Id.*, p. 167). The court accepted Sasser's pleas and found them to be freely and voluntarily entered:

THE COURT: All right. And this is what you want to do to get these cases resolved; is that right, Mr. Sasser?

THE DEFENDANT: Yes, sir.

THE COURT: All right. We've had a factual basis as to all of the charges. I'll find there is a sufficient factual basis. I'll accept the pleas, find they're entered freely and voluntarily upon the advice of competent counsel who he indicates [sic] his satisfaction.

He does qualify as [a] habitual offender and as a prison releasee reoffender in the last conviction, having been within three years, in 2010, of the date of the offense that occurred in this instance, the aggravated battery and the burglary.

(*Id.*, p. 169).

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

The record supports the conclusion that Sasser's pleas were voluntary. Sasser made the offer, repeatedly confirmed that he wanted to enter the pleas to resolve all of his cases, and told the court that he was not threatened or coerced to plead. The court reviewed Sasser's qualifications for HFO sentencing, and Sasser indicated that he understood he faced 30 years in prison as an HFO with a 15-year PRR term on the charges of aggravated battery and burglary, as well as five years for failure to appear.

(Doc. 8, Ex. 4, pp. 167-69).

Sasser's petition presents claims of ineffective assistance of trial counsel. Because Sasser pleaded guilty, he may raise such claims only to the extent they concern the validity of his pleas. *See United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Calhoun v. Sec'y, Fla. Dep't of Corr.*, 607 Fed. App'x 968, 971 (11th Cir. 2015) ("[A] defendant, who pled guilty on the advice of counsel, may attack the voluntary and intelligent character of the plea by showing that counsel rendered ineffective assistance, described in *Strickland.*"); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").

To establish ineffective assistance, Sasser must first demonstrate that counsel performed deficiently. He must show that "counsel's representation fell below an objective standard of reasonableness" in that it was "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984). However, counsel owes a lesser duty to a client who pleads guilty instead of proceeding to trial. Counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (citing *Walker v. Caldwell*, 476 F.2d 213, 218 (5th Cir. 1973).

Sasser must also show that he was prejudiced by counsel's deficient performance

by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because he pleaded guilty, Sasser "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Obtaining relief on a claim of ineffective assistance of counsel is difficult because federal habeas review is "doubly" deferential to counsel's performance and the state court's decision. *Richter*, 562 U.S. at 105.

Ground One

Sasser argues that trial counsel was ineffective in failing to object to the factual basis for the aggravated battery charge that the prosecutor presented at the plea hearing. The battery was charged as aggravated battery because the victim was pregnant. *See* § 784.045(1)(b), Fla. Stat. ("A person commits aggravated battery if the person who was the victim of the battery was pregnant at the time of the offense and the offender knew or should have known that the victim was pregnant."). Sasser claims that the prosecutor falsely represented that Sasser knew the victim was pregnant, and that he had told counsel that he was unaware the victim was pregnant. He contends that, if counsel had correctly informed him that the State would have to prove each element of the offense at a trial, he would have insisted on proceeding to trial.

The state court denied Sasser's claim:

A guilty plea admits the facts charged in the information. See Stovall v. State, 252 So. 2d 376, 378 (Fla. 4th DCA 1971). When a defendant pleads guilty, the State is not required to prove its case against the defendant beyond a reasonable doubt; the court must determine only that there is a factual basis for the plea. See Fla. R. Crim. P. 3.172(a); State v. Sion, 942

So. 2d 934, 937 (Fla. 3d DCA 2006).  The purpose of the factual basis "is to prevent a defendant from mistakenly pleading to the wrong offense."  Id. at 937.  The felony information for aggravated battery alleges that Defendant intentionally struck the pregnant victim against her will, or intentionally caused bodily harm to her, and Defendant knew or should have known at the time of the battery that the victim was pregnant.  At the change of plea hearing, the State indicated on the record that the victim and Defendant argued in their hotel room.  After Defendant left the scene, a hotel employee waited with the victim while she collected her things.  The Defendant returned to the hotel room, grabbed the victim, and punched her several times in the face.  The hotel employee collected the victim's screaming daughter and called 911.  According to the State, the hotel employee would testify that the victim was visibly pregnant.  Defendant denied to law enforcement that he hit the victim, but later made admissions during recorded conversations with the victim over a jail telephone.

It is readily apparent from the record that the State set forth a sufficient factual basis to apprise the court and Defendant of the underlying facts of the aggravated battery Defendant pled guilty to.  The facts, as alleged, are sufficient to support a conviction for aggravated battery.  See § 784.045(1)(b), Fla. Stat. (2011).  Defendant contends that the factual basis was deficient because the State did not prove Defendant knew or should have known the victim was pregnant.  Again, when a defendant pleads guilty, the State is not required to prove each element of the offense beyond a reasonable doubt.  If the Defendant wanted to test the sufficiency of the State's evidence, he could have gone to trial.  Instead, he chose to plead guilty for a favorable global disposition of all three of his cases.  The State adequately set forth a factual basis for the offense and counsel was not ineffective for failing to object.  See McCree v. State, 982 So.2d 1278, 1280 (Fla. 2d DCA 2008) (counsel cannot be ineffective for failing to raise a meritless motion).  This claim is denied.

(Doc. 8, Ex. 17, pp. 126-27) (court's record citations omitted).

As the state court found, Sasser admitted to the facts alleged by entering his plea.

*See United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("A guilty plea . . .

admits all the elements of a formal criminal charge.") (quoting *United States v. Fairchild*,

803 F.2d 1121, 1124 (11th Cir. 1986)).  The charging document alleged that the victim was

pregnant and that Sasser knew or should have known she was pregnant.  (Doc. 8, Ex. 2).

Further, Sasser offered the plea and clearly told the court that he wanted to dispose of all

charges by pleading. Accordingly, he has not demonstrated that counsel's failure to object rendered his plea to aggravated battery involuntary. *See, e.g., Lee v. United States*, ___ U.S. ___,137 S.Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would not have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.").

Sasser has not shown that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground One.

Ground Two

Sasser alleges that counsel was ineffective in failing to object to the State's factual basis for the charge of burglary of an occupied dwelling. He claims that counsel failed to inform him that the prosecution had to prove that he entered the dwelling. Sasser concedes that he was present and took the screen off a window, but contends that it was his co-defendant who actually entered the house. The state court denied this claim:

> The felony information for the burglary alleged that Defendant, without invitation or license, entered a dwelling occupied by the victims with the intent to commit an offense therein. At the change of plea hearing, the State indicated that the victims were asleep inside their home when they were awakened by their vehicle alarm. One of the victims confronted two black males standing by the car and the men ran away. The victims later noticed a purse, keys, cash, and credit cards missing from the inside of their home. Defendant's fingerprints were found on the inside and outside of the screen covering the window used to access the home. Defendant's fingerprints were also found on the driver's side door of the victims' vehicle. Defendant admitted, post-Miranda, that he was present during the offense and that he removed the screen, but denied physically entering the home and indicated that his co-defendant took the items from the house.
>
> It is readily apparent from the record that the State set forth a sufficient

factual basis to apprise the court and defendant of the underlying facts of the burglary.  See § 810.02(3)(a), Fla. Stat. (2012).  Defendant contends that the factual basis was deficient because the State did not prove Defendant physically entered the victim's home.  Again, when a defendant pleads guilty, the State is not required to prove each element of the offense beyond a reasonable doubt.  The State's theory of the case was that Defendant removed the window screen, entered the victims' home through the window, and took the missing items.  If Defendant wanted to contest the State's theory of events, he could have gone to trial.  Instead, he chose to plead guilty for a favorable global disposition of all three of his cases.  The State adequately set forth a factual basis that Defendant committed burglary of an occupied dwelling and counsel was not ineffective for failing to object.  See Ferrell v. State, 29 So. 3d 959, 976 (Fla. 2010) ("Trial counsel cannot be deemed ineffective for failing to raise a meritless argument.") (citing Mungin v. State, 932 So. 2d 986, 997 (Fla. 2006)).  This claim is denied.

(Doc. 8, Ex, 17, pp. 127-28) (court's record citations and footnote omitted).

Again, Sasser admitted to the State's allegations when he entered his plea, *see Brown*, 752 F.3d at 1347, and the charging document specifically alleged that he entered the residence. (Doc. 8, Ex. 1).  Further, as addressed, Sasser made the plea offer and said several times at the hearing that he wanted to enter the plea to dispose of all of his cases. Under these circumstances, he has not shown that counsel's failure to object to the State's factual basis provided at the plea hearing rendered his plea to burglary involuntary.

Sasser has not shown that the state court's decision was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.  Consequently, he is not entitled to relief on Ground Two.

Grounds Three and Seven

Sasser argues that trial counsel was ineffective in failing to object to the charging information and seek dismissal of the burglary charge.  In Ground Three, he contends that the information omitted "the essential element of 'intent'" which "left the charging

information as to the charged burglary of an occupied dwelling so vague, indistinct, and indefinite so [as] to mislead [him] in the preparation of his defense." (Doc. 1, p. 8). In Ground Seven, he claims that counsel should have objected because the notary's stamp next to the Assistant State Attorney's signature on the information incorrectly listed the year, and that counsel should have raised a statute of limitations challenge.

The state court rejected his claim that trial counsel was ineffective in not objecting to the elements as alleged in the charging document:[4]

> A felony information is a charging document that informs the defendant of the essential facts of the State's allegations and the law(s) the defendant is alleged to have violated. See Fla. R. Crim. P. 3.140(d). A charging document is not evidence and does not have to list every piece of evidence underlying the State's case. See id. "An information should not be dismissed unless it is 'so vague, indistinct, and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense.'" Mobley v. State, 409 So. 2d 1031, 1034 (Fla. 1982) (quoting Fla. R. Crim. P. 3.140(o)). The felony information alleges that on December 13, 2013 [sic], Defendant, without invitation or license, entered the victims' occupied dwelling, with intent to commit an offense therein, contrary to Section 810.02(3)(a), Florida Statutes. The information identifies Defendant and the victims, states the date and location of the offense, and alleges each of the elements necessary to establish a burglary of an occupied dwelling pursuant to the applicable statute. Defendant apparently contests the State's theory of the offense. However, Defendant's subjective disagreement with the allegations does not render the information deficient. If Defendant wanted to challenge the State's evidence, he could have gone to trial. The information was not legally deficient and counsel was not ineffective for failing to move to dismiss. See McCree v. State, 982 So. 2d 1278, 1280 (Fla. 2d DCA 2008) (counsel cannot be ineffective for failing to raise a meritless motion). Defendant was therefore not prejudiced and this claim is denied.

(Doc. 8, Ex. 17, pp. 128-29) (court's record citation omitted).

---

[4] To the extent Sasser's claims involve matters prior to the entry of his guilty pleas, his voluntary and intelligent pleas waive the allegations. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Notwithstanding, Sasser does not show entitlement to relief.

The state court also rejected Sasser's claim concerning an incorrect date on the charging information and the statute of limitations:

> Defendant alleges counsel was ineffective for failing to object to the felony information for burglary of an occupied dwelling, where the State "received testimony under oath to charge Defendant . . . 12 months before the crime occurred." Defendant claims he was prejudiced because the charge would have been dismissed if counsel pointed out this defect. He appears to further claim that counsel should have raised a statute of limitations challenge to the information.
>
> The felony information for burglary of an occupied dwelling, filed on January 3, 2013, alleges that Defendant committed the burglary on December 13, 2012. Defendant argues that the information was defective because the notary's stamp next to the Assistant State Attorney's signature is dated January 2, *2012*, instead of 2013; a scrivener's error likely attributable to the new calendar year beginning the day before. Florida Rule of Criminal Procedure 3.140 provides, in pertinent part, that "[n]o indictment, information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted, on account of any defect in the form of the indictment or information . . . or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution of the same offense." Even if counsel pointed out the scrivener's error next to the date of the Assistant State Attorney's signature, Defendant would not have been entitled to the relief he claims. The information is not vague or misleading about the State's allegations and a motion to dismiss would not have been successful. See Fla. R. Crim. P. 3.190(c); see also Selley v. State, 403 So. 2d 427 (Fla. 5th DCA 1980) ("a defect in the form of the information does not necessarily require dismissal unless it appears that the information is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense.").
>
> Additionally, the information was filed well within the applicable statute of limitations for burglary. Burglary of a dwelling is a second-degree felony. See § 810.02(3)(a), Fla. Stat. (2012). Absent certain extraordinary circumstances, a prosecution for a second-degree felony must be commenced within three years after it is committed. See § 775.15(2)(b), Fla. Stat. (2012). A prosecution is commenced by the filing of the charging document. See § 775.15(4)(a), Fla. Stat. (2012). The felony information in this case alleged that the burglary was committed on December 13, 2012,

and the information was filed on January 3, 2013; well within the three year limitations period. Counsel had no legal basis to move to dismiss the information or the charges because of the scrivener's error or under the applicable statute of limitations. Counsel was therefore not ineffective for failing to raise this argument and Defendant was not prejudiced. <u>See McCree v. State</u>, 982 So.2d 1278, 1280 (Fla. 2d DCA 2008). This claim is denied.

(*Id.*, pp. 131-32) (court's record citations omitted) (emphasis in original).

Sasser has not established that the charging document contained any error or omission to which counsel should have objected. It listed the elements of burglary[5] and informed him of the charge against him. And despite the error in the notary's date stamp, the charging document, filed January 3, 2013, clearly alleged that he committed burglary on December 13, 2012. (Doc. 8, Ex. 1). *See, e.g, Miller v. State*, 42 So.3d 204, 215 (Fla. 2010) ("For a charging document 'to sufficiently charge a crime it must follow the statute, clearly charge each of the essential elements, and sufficiently advise the accused of the specific crime with which he is charged.'") (quoting *Price v. State*, 995 So.2d 401, 404 (Fla. 2008)).

Further, to the extent the state court relied on and applied Florida law in determining that the charging document was not so deficient as to warrant dismissal, deference must be afforded to the state court's ruling. Sasser's ineffective assistance of counsel claim is a federal constitutional claim, but when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . [a federal court] must defer to the state's construction of its own law." *Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th

---

[5] Burglary occurs when a person "[e]nter[s] a dwelling, structure, or conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter." § 810.02(1)(b), Fla. Stat. The charging document alleged that Sasser entered an occupied dwelling with the intent to commit an offense therein, that Sasser did not have invitation or license to enter the dwelling, and that the dwelling was not open to the public. (Doc. 8, Ex. 1).

Cir. 2008) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Finally, Sasser has not established that counsel should have raised a statute of limitations defense. The information was filed less than one month after the burglary occurred. *See* § 775.15(1)(b), Fla. Stat. (establishing a three-year statute of limitations for a second degree felony). Sasser has failed to show that the state court's ruling was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground Three or Ground Seven.

Ground Four

Sasser contends that trial counsel was ineffective in misleading him about the evidence. He claims that counsel falsely told him he had deposed the victim in the aggravated battery case and that the victim implicated him. He claims that the victim actually would have exonerated him. The state court denied this claim:

> Defendant alleges counsel was ineffective for misleading him about deposing the victim. Specifically, he alleges that counsel did not depose the victim, but nevertheless told Defendant that the victim implicated him during a deposition. Defendant asserts that he would not have pled guilty if counsel did not deceive him about the victim's potential trial testimony. Defendant claims that the victim would have testified at her deposition that Defendant did not commit the offense.
>
> The record reflects that counsel subpoenaed the victim, Melissa Hamel, and a witness, Sabrina Jordon, for depositions scheduled for August 16, 2012. Transcripts of the depositions are not in the court file. The Court finds the Defendant's claim to be speculative and conclusory. Neither the State nor defense counsel is required to have its depositions transcribed. Defendant's conclusion that counsel must have lied to him about conducting the deposition just because counsel chose not to have it transcribed is entirely speculative. Defendant's claim that the victim would have exonerated him is likewise entirely speculative and particularly dubious, considering that she apparently implicated Defendant during recorded jail phone calls, refused to request that the State drop the charges against him, and did not want the

State to accept Defendant's plea offer because she wanted him to receive the maximum possible sentence. Speculative and conclusory allegations are insufficient to establish a prima facie claim[ ] for postconviction relief. See Griffin v. State, 866 So.2d 1, 9 (Fla. 2003). Defendant fails to establish that counsel was ineffective or that he was prejudiced thereby. This claim is denied.

(Doc. 8, Ex. 17, p. 129) (court's record citations omitted).

The record supports the denial of this claim. Sasser has not shown that counsel falsely told him that he deposed the victim or incorrectly advised him that the victim implicated him. Nor has he presented any evidence that the victim would have given testimony exonerating him. And, as the state court noted, the State indicated at the plea hearing that the victim suggested his guilt during jail phone calls, rejected his suggestion that she tell the State Attorney that the events did not occur, and was "against" a plea agreement for "just" 15 years. (Doc. 8, Ex. 4, pp. 157, 158). Therefore, his claim is too speculative to warrant relief. See, e.g., Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)). See also Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (a federal court may not grant habeas relief "on the basis of little more than speculation with slight support."); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Sasser has not established either prong of Strickland. As he does not show that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts, he is not entitled

to relief on Ground Four.

Ground Six

Sasser argues that trial counsel was ineffective in failing to depose the aggravated battery victim. This claim is liberally construed as raising the argument presented in ground five of Sasser's initial and first amended postconviction motions (Doc. 8, Ex. 17, pp. 16-20, 50-54) and ground six of his second amended postconviction motion (*Id.*, pp. 97-99). There, Sasser alleged that counsel was ineffective in failing to take a deposition to perpetuate the victim's testimony. He asserted a reasonable probability that the victim would have testified that he did not know she was pregnant, which "would have reduced the charge to simpl[e] battery." (*Id.*, p. 99). The state court denied this claim:

> Defendant alleges counsel was ineffective for failing to depose victim Melissa Hamel. Defendant claims there is a reasonable probability that Ms. Hamel would have testified during the deposition that Defendant did not know she was pregnant, which would have refuted the charge of aggravated battery on a pregnant person in case number CRC12-04937CFANO. Defendant again asserts, as he does in Claim Four, that counsel misled him to believe Ms. Hamel was deposed and testified unfavorably to Defendant's case. Defendant claims he was prejudiced because counsel allowed him to plead guilty to a crime he did not commit.
>
> As explained in Claim Four, the record reflects that counsel subpoenaed the victim, Melissa Hamel, and a witness, Sabrina Jordon, for depositions scheduled for August 16, 2012. Transcripts of the depositions are not in the court file. However, the Court finds Defendant's claim to be speculative and conclusory. Neither the State nor defense counsel is required to have depositions transcribed. Defendant's allegation that counsel must have lied to him about conducting the deposition just because counsel chose not to have it transcribed is entirely speculative. Defendant's claim that the victim would have exonerated him is likewise entirely speculative and particularly dubious, considering that she apparently implicated Defendant during recorded jail phone calls, refused to request that the State drop the charges against him, and did not want the State to accept Defendant's plea offer because she wanted him to receive the maximum possible sentence. Speculative and conclusory allegations are insufficient to establish a prima facie claim for postconviction relief. See Griffin v. State, 866 So. 2d 1, 9 (Fla.

> 2003).  Defendant fails to establish that counsel was ineffective or that he was prejudiced thereby.  This claim is denied.

(Doc. 18, Ex. 17, p. 131) (court's record citations omitted).

For the same reasons addressed in Ground Four, *supra*, Sasser has not shown that counsel was ineffective.  He has not established that counsel failed to depose the victim. Moreover, he has not provided any evidence showing what the victim would have said, and the State's representations at the change of plea hearing suggest that, contrary to his assertions, she would not have exonerated him.  He cannot obtain relief on this entirely speculative claim.  *See Bartholomew*, 516 U.S. at 8; *Johnson*, 256 F.3d at 1187; *Tejada*, 941 F.2d at 1559.  Sasser fails to show that the state court's ruling was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  He is not entitled to relief on Ground Six.

Ground Five

Sasser argues that trial counsel was ineffective in misleading him about the potential penalty he faced upon conviction at a trial.  He claims that counsel advised him that he would be sentenced to a mandatory term of life imprisonment as a habitual felony offender and prison releasee reoffender for the aggravated battery and burglary charges.  Sasser claims, however, that "neither charge set fort[h] carried a mandatory life imprisonment under the Florida Habitual Felony Offender statute, 775.084 or Prison Releasee Reoffender statute, 775.082."  (Doc. 1, p. 11).

Initially, although Sasser alleged in his state postconviction motion that counsel misadvised him about the potential penalty he faced, he did not allege that counsel misinformed him that he faced a mandatory life sentence upon conviction at trial.  (Doc. 8,

Ex. 17, pp. 6-8, 40-42, 94-96).  Therefore, he has not satisfied the requirement that he exhaust his federal claim in state court before presenting it in his federal habeas petition.[6] Accordingly, his claim, as presented, is unexhausted.  *See Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) (when a federal habeas petitioner raises facts in support of his ineffective assistance claim that differ from those raised in state court, the federal claim is unexhausted).  Because Sasser cannot return to state court to present the argument in a successive, untimely postconviction motion, *see* Fla. R. Crim. P. 3.850(b), (h), the claim is procedurally defaulted.  *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.").  Sasser has not established the applicability of either exception.

Notwithstanding, Sasser fails to show prejudice as a result of counsel's performance. He told the court that he understood the HFO and PRR sentences for which he was eligible.  (Doc. 8, Ex. 4, p. 167).  Specifically, he stated that he understood when the court told him he could receive 30 years as an HFO with a 15-year PRR sentence on the aggravated battery and burglary counts, and a maximum term of five years for failure to appear.  (*Id.*).  This would have dispelled any incorrect advice from counsel about the potential sentence he faced.  Additionally, Sasser has not demonstrated a reasonable probability that he would have proceeded to trial and risked the possibility of a significantly longer sentence instead of entering the negotiated plea to resolve all three cases for an

---

[6] *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State.").

overall term of 15 years in prison. He has not shown that he was prejudiced by counsel's performance. *See Hill*, 474 U.S. at 59.

To the extent Sasser intends to raise the claim as presented in his postconviction motion, he is not entitled to relief. There, he alleged that counsel coerced him into entering the plea by telling him that he could be sentenced to life in prison as both an HFO and PRR upon conviction at trial, but that counsel's advice was incorrect. The state court denied Sasser's claim:

> Defendant alleges counsel was ineffective for misadvising him about the maximum possible penalties if convicted at trial. According to Defendant, counsel advised him on the morning of trial that Defendant could be sentenced to life in prison as an HFO and PRR. Defendant claims this advice was erroneous because the law prohibits dual HFO and PRR sentences. He asserts that he would not have pled guilty if he had not been scared of receiving a life sentence after trial.

> In Case Number CRC12-04937CFANO, which was scheduled for trial the day of Defendant's plea, Defendant was charged with one count of battery on a pregnant person, a second degree felony. See § 784.045, Fla. Stat. (2011). In Case Number CRC12-22208CFANO, Defendant was charged with one count of burglary of an occupied dwelling, a second-degree felony. § 810.02(3), Fla. Stat. A defendant who qualifies as a PRR must be sentenced to [a] minimum of 15 years' imprisonment for a second-degree felony. § 775.082(9)(a)3.c., Fla. Stat. (2011). A defendant who qualifies as an HFO may be sentenced to up to 30 years' imprisonment for a second-degree felony. § 775.084(4)(a), Fla. Stat. (2011). Thus, in this case, Defendant was facing a maximum of 30 years in prison as an HFO with a 15 year PRR minimum-mandatory *on each count* of aggravated battery and burglary, and an additional 5 years for the failure to appear. See § § 775.082, 843.15(1)(a), Fla. Stat. (2012). Contrary to Defendant's assertion, the law does not prohibit the imposition of an HFO sentence with a PRR minimum-mandatory. The PRR Act prohibits only the imposition of an HFO sentence that is concurrent *and coterminous* to a PRR minimum-mandatory for a single offense. See Phelps v. State, 9 So. 3d 54, 54 (Fla. 2d DCA 2009) (citing Rule v. State, 997 So. 2d 1274 (Fla. 2d DCA 2009)); Grant v. State, 770 So. 2d 655, 659 (Fla. 2000). A 30 year HFO sentence with a 15 year PRR minimum-mandatory would not have run afoul of that provision. If Defendant was convicted after trial in each case, he was facing a total maximum of 65 years in prison; a *de facto* life sentence. Counsel's advice regarding the dual imposition of HFO

and PRR sentences was legally correct and therefore not erroneous.  Counsel cannot be deemed ineffective for rendering accurate legal advice.

Moreover, the Court finds there is no reasonable probability that Defendant would not otherwise have pled guilty.  It is apparent from the record that Defendant wanted to resolve the case short of a trial, but the State refused his offers.  Defense counsel indicated that he "begged the State to waive the PRR," and offered 15 years PRR the morning of trial, but the State still refused.  The court's offer for a global and concurrent disposition of the case is the only reason Defendant was able to avoid going to trial and risking a maximum overall sentence of 65 years if convicted.  The court thoroughly explained the maximum possible sentence for each charge, considering that Defendant qualified as an HFO and PRR, and Defendant affirmed that he understood.  This claim is denied.

(Doc. 8, Ex. 17, pp. 129-30) (court's record citations omitted) (emphasis in original).

The state court determined that, under Florida law, counsel correctly advised Sasser that he could be sentenced as both an HFO and PRR.  *See Will*, 278 Fed. App'x at 908. And as addressed above, Sasser's understanding of the maximum sentences he faced, as reflected in the change of plea hearing transcript, rectified any incorrect advice about the length of the sentences.  Additionally, as the state court found, Sasser has not shown prejudice because he has not shown a reasonable probability that he would have chosen to proceed to trial instead of entering his pleas if not for the alleged errors in counsel's representation.  *See Hill*, 474 U.S. at 59.  He repeatedly expressed his desire to enter a plea in order to resolve his cases, and he faced a significantly longer punishment upon conviction at trial than the sentence the court accepted over the State's objection.  Because Sasser has not shown that the state court's decision was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts, he is not entitled to relief on Ground Five.

Ground Eight

Sasser alleges that his federal due process rights have been violated because his aggravated battery sentence is illegal. Specifically, he claims that "aggravated battery on a pregnant person" is not a qualifying offense for PRR sentencing under § 775.082, Fla. Stat. (Doc. 1, p. 15). This claim is not cognizable in Sasser's federal habeas proceeding because it concerns the validity of his sentence under state law. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief. In the area of state sentencing guidelines in particular, we consistently have held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures.") (citations omitted). That Sasser presents the issue as alleging a federal due process violation does not make a difference. *See id.* ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'") (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)).

Accordingly, it is **ORDERED** that:

Sasser's petition is **DISMISSED** as time-barred. The Clerk is directed to remove the alias "Irving Palmer" from the docket, enter judgment against Sasser, and close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is further **ORDERED** that Sasser is not entitled to a certificate of appealability (COA). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. *Id.* "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To merit a COA, Sasser

must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See id.*; *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because the petition is clearly time-barred, and because Sasser has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a COA.  Finally, because Sasser is not entitled to a COA, he is not entitled to appeal *in forma pauperis.*

  **ORDERED** at Tampa, Florida, on January 30, 2018.


<u>_Virginia M. Hernandez Covington_</u>
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Ishmael A. Sasser
Counsel of Record